UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE, et al.,

                              Plaintiffs,

        -v-

DELAWARE STATE POLICE, and SEAFORD
POLICE DEPARTMENT,
                              Defendants.

Case No. 10-CV-3003 (KMK)

OPINION AND ORDER

AMENDED VERSION[1]

Appearances:

Rick S. Cowle, Esq.
Carmel, New York
*Counsel for Plaintiffs*

Ilona Kirshon, Esq.
Michael F. McTaggart, Esq.
Deputy Attorneys General, State of Delaware
Wilmington, Delaware
*Counsel for Defendant Delaware State Police*

Thomas K. Moore, Esq.
White Plains, New York
*Counsel for Defendant Seaford Police Department*

KENNETH M. KARAS, District Judge:

        Plaintiffs John Doe, Jane Doe, and Jack Doe ("Plaintiffs"), residents of New York, bring

this action against Defendants Delaware State Police ("DSP") and Seaford Police Department

("Seaford PD") (collectively "Defendants") asserting common law claims of "negligence per

se," "gross and wanton negligence," and "loss of reputation, companionship and services."

---

[1] To protect Plaintiffs' identity, the Court has allowed Plaintiffs to proceed anonymously.
(*See* Unsealing Order of April 2, 2013.)  This Amended Opinion redacts all information that
might reveal Plaintiffs' identity.

(Verified Complaint ("Compl.") ¶¶ 60, 63, 67, 71.)  The Complaint in this case and all other submissions were sealed pursuant to an order of Judge Cathy Seibel dated April 7, 2010, granting Doe leave to file the Complaint and all subsequent pleadings and documents under seal. Later, by Order dated March 13, 2013, the Court ordered the case be unsealed; however, Plaintiffs' names and a few other details that may lead to their identification have been redacted from the version of this Opinion originally filed under seal.

Defendants have moved to dismiss.  The motions are granted in large part, though, as explained below, Plaintiffs have the option of accepting a transfer to the District of Delaware in lieu of the dismissal of the Seaford PD.

## I. Background

The Complaint alleges the following facts, accepted as true for the purpose of deciding these motions.  In August 2000, John Doe, then age sixteen, pled guilty in Delaware to a charge of unlawful sexual contact in the third degree after being accused of inappropriately touching a seventeen-year-old girl.  (Compl. ¶¶ 13-14.)  Doe was thereafter required to register as a sex offender in his then–home state of Delaware.  (*Id.* ¶¶ 15-16.)  In his registration, Doe listed various addresses and a phone number at which he could be found, including two addresses in the City of Seaford, Delaware ("Seaford").  (*Id.* ¶ 17.)  Doe's Delaware conviction was expunged by order of the Family Court of Delaware on December 10, 2009.  (*Id.* ¶ 46; Ex. 3.)

In September 2008, before expungement of the conviction, an officer of the DSP made a random check for Doe's whereabouts.  The officer, for an unknown reason, went to an apartment in Seaford that was not listed on Doe's sex offender registration and at which Doe alleges he had never lived.  (*Id.* ¶¶ 19-20, 26.)  Finding the apartment vacant, the officer informed the Seaford PD, which obtained an Adult Complaint and Warrant (the "Delaware warrant") against Doe from

2

the Delaware Justice of the Peace Court on October 1, 2008.  (*Id.* ¶¶ 21, 24-25; Ex. 1.)  The

Delaware warrant authorized Doe's arrest for failing to re-register as a sex offender after a

change of address.  (*Id.* Ex. 1, at 3.)  Doe alleges that neither the DSP nor Seaford PD attempted

to contact him at the phone number or any of the Delaware addresses he had listed on his sex

offender registration, even though this information was available to Defendants.  (*Id.* ¶¶ 27-32.)

Doe later moved from Delaware to New York and married Plaintiff Jane Doe.  (*Id.* ¶¶ 35-

36.)  On September 15, 2009, John Doe was pulled over for a traffic violation in New Castle,

New York; the Delaware warrant was discovered during the ensuing background check, and Doe

was arrested and detained in Westchester County.  (*Id.* ¶¶ 37-38.)  Delaware did not seek Doe's

extradition and he was released on September 21, 2009.  (*Id.* ¶ 41.)  News of Doe's arrest

reached a local news outlet.  (*Id.* ¶¶ 43-44; Ex. 2.)  Doe alleges that viewers of the outlet's

website posted "vicious" comments about the story, and that the publicity surrounding his arrest

led him and his family to suffer harassment by their neighbors, forcing the family to move.  (*Id.*

¶¶ 44-45.)

Plaintiffs filed the Complaint in this case, asserting two negligence claims against

Defendants, both based on the allegations that Defendants searched for Doe at the wrong

address, failed to confirm his whereabouts at the correct addresses, and caused the Delaware

warrant to be issued based on false information.  (*Id.* ¶¶ 56, 63.)  Plaintiffs allege that these acts

constituted "wanton and gross negligence, carelessness and recklessness," (*id.* ¶ 63), and were

also negligent per se because they were allegedly done "in violation of" unspecified "local and

State laws, police procedures, rules and ordinances," (*id.* ¶ 57.)  The Complaint also contains

two claims for "loss of reputation, companionship and services," asserted by Plaintiffs Jane and

Jack Doe, the couple's minor son, respectively.  (*Id.* ¶¶ 67-72.)  Plaintiffs seek $35,000,000 in

compensatory, "exemplary," and punitive damages on the negligence claims, and $150,000 each on the "loss of reputation" claims.  (*Id.* ¶ 72.)

## II. Discussion

DSP seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (3). In its motion, DSP contends that (1) the Court lacks subject matter jurisdiction over the claims against it because DSP is protected by Delaware's state sovereign immunity; (2) venue is improper in this District; and (3) DSP is not subject to this Court's personal jurisdiction.  (Def. Del. State Police's Mem. of Law in Supp. of its Mot. to Dismiss ("DSP's Mem.") 2, 5-7, 9-11; Def. Del. State Police's Reply Mem. of Law in Supp. of its Mot. to Dismiss ("DSP's Reply") 4-6.)  Seaford PD joins DSP's arguments regarding venue and personal jurisdiction, and in addition contends that the case should be transferred to Delaware pursuant to 28 U.S.C. § 1404(a), and that it has immunity from Plaintiffs' claims under Delaware law.  (Def. Seaford Police Dep't's Mem. of L. in Supp. of its Mot. to Dismiss ("Seaford Mem.") unnumbered 8-11.) Plaintiffs oppose the motions and seek an order from the Court "[g]rant[ing] Summary Judgment 'Sua Sponte' in the Plaintiffs' favor."  (Mem. of Law in Supp. of Pls.' Ans. to Defs.' Mot. to Dismiss & Request to Change Venue ("Pls.' Mem.") 23.)

### A. Standard of Review

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)). Although a court is free to "choose among threshold grounds" for dismissing an action so long as none involve "a judgment on the merits," *id.* at 431 (internal quotation marks omitted), "the

4

proper course" is to dismiss an action for lack of jurisdiction if the "court can readily determine that it lacks jurisdiction over the cause or the defendant," *id.* at 436; *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (holding that "[w]here . . . a district court has before it a straightforward personal jurisdiction issue . . . and [an] alleged defect in subject-matter jurisdiction rais[ing] a difficult and novel question," the court has discretion to "turn[] directly to personal jurisdiction").  Under the circumstances of this case, the Court will address DSP's objections to subject matter jurisdiction and then address personal jurisdiction. Consideration of these two issues alone is sufficient to decide Defendants' motions.

If a court lacks subject matter jurisdiction over a claim, the claim must be dismissed as the court "lacks the statutory or constitutional power to adjudicate it." *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (internal quotation marks omitted); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action.").  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court "take[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of [the] plaintiff." *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation marks omitted).  However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 130 S. Ct. 2869 (2010).  "In resolving a motion . . . under Rule 12(b)(1) a district court may consider evidence outside the pleadings,"

*id.*, but it "may not rely on conclusory or hearsay statements contained in" such evidence, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

The plaintiff bears the burden of establishing the court's personal jurisdiction over a particular defendant.  *See Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  On a Rule 12(b)(2) motion, the plaintiff carries this burden by making a prima facie showing that jurisdiction exists.  *Id.* at 34-35; *see also S. New England Tel. Co. v. Global Naps Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("*SNET*").  "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  *SNET*, 624 F.3d at 138 (internal quotation marks omitted).  The court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor," *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," and a plaintiff may not rely on "conclusory non-fact-specific jurisdictional allegations" to overcome a motion to dismiss, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (internal quotation marks omitted).

B.  Analysis

1.  Claims Against Defendant Delaware State Police

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  "Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign county, it has been interpreted also to bar federal suits against state governments by a state's own

6

citizens." *Woods v. Rondout Valley Cent. Sch. Dist.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing

*Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).  The Eleventh Amendment applies unless a state

affirmatively waives its immunity, *see Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613,

618 (2002); *Coll. Sav. Bank v. Fla. Prepaid Secondary Educ. Expense Bd.*, 527 U.S. 666, 675-76

(1999), or if Congress, through a statute passed as a valid exercise of its power under Section

Five of the Fourteenth Amendment, makes "unmistakably clear" in the statute's text its intent to

abrogate the states' immunity, *Nev. Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726

(2003).  A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the

Eleventh Amendment for lack of subject matter jurisdiction.  *See Va. Office for Prot. &*

*Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011) (noting that "the Eleventh Amendment . . .

confirm[s] the structural understanding that States entered the Union with their sovereign

immunity intact, unlimited by Article III's jurisdictional grant"); *Seminole Tribe of Fla. v.*

*Florida*, 517 U.S. 44, 54 (1996) ("For over a century [the Supreme Court has] reaffirmed that

federal jurisdiction over suits against unconsenting State 'was not contemplated by the

Constitution when establishing the judicial power of the United States.'" (quoting *Hans*, 134

U.S. at 15)).

     Eleventh Amendment immunity extends not only to a State when sued as a defendant in

its own name, but also to "state agents and state instrumentalities" when "the state is the real,

substantial party in interest."  *Regents of the Univ. Of Cal. v. Doe*, 519 U.S. 425, 429 (1997)

(internal quotation marks omitted).  The DSP is clearly an agency of the state of Delaware, and

Plaintiffs do not argue otherwise.  (Pls.' Mem. 8.)  *See* Del. Code Ann. tit. 11, § 8301 (2009)

(providing that the Delaware "Department of Safety and Homeland Security . . . may appoint

police officers whose primary duty shall be to compel the enforcement of all laws relating to . . .

vehicles on the public highways of the State [to be known as the] State Police"); *Buchanan v. Gay*, 491 F. Supp. 2d 483, 493 (D. Del. 2007) (describing DSP as among "Delaware's branches of government and its State agencies"); *Neeley v. Samis*, 183 F. Supp. 2d 672, 673 (D. Del. 2002) (describing DSP as "a governmental agency of the State of Delaware"); *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004) (en banc) (holding that the DSP may invoke the State's sovereign immunity); *see also Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (listing factors to consider in determining whether entity is "arm of the state" for Eleventh Amendment purposes).  For this reason, Delaware courts have uniformly held that the DSP is generally immune from suit under the Eleventh Amendment.  *See Buchanan*, 491 F. Supp. 2d at 493 (dismissing § 1983 and other federal statutory claims against DSP on Eleventh Amendment grounds); *see also Yarnall v. Mendez*, 509 F. Supp. 2d 421, 429 (D. Del. 2007) (dismissing excessive force claim against DSP on Eleventh Amendment grounds); *Neeley*, 183 F. Supp. 2d at 678 (same); *McDowell v. Del. State Police*, No. 95-CV-129, 1999 WL 151873, at *5 (D. Del. Mar. 15, 1999) (dismissing negligence claim against DSP and officers in official capacity on Eleventh Amendment grounds).

There is no question of congressional abrogation here, as Plaintiff's claims are based on Delaware common law.  Plaintiffs contend, however, that the Delaware State Tort Claims Act, Del. Code Ann. tit. 10, § 4001 *et seq.* ("State Tort Claims Act" or "§ 4001"), constitutes a waiver of the state's sovereign immunity for tort claims involving gross negligence.  (Pls.' Mem. 9-12.) The relevant portion of this statute provides:

> Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the

members of any board, commission, conservation district or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:

> (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;
> (2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and
> (3) The act or omission complained of was done without gross or wanton negligence . . . .

Del. Code Ann. tit. 10, §4001.

A state may waive its sovereign immunity only voluntarily, and the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Fla. Prepaid*, 527 U.S. at 675 (internal quotation marks omitted). A court may only conclude that a State has waived its immunity by way of a state statute when the statute contains "the most express language or . . . such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (alteration and internal quotation marks omitted); *see also Doe v. Pataki*, 481 F.3d 69, 78 (2d Cir. 2007) ("[T]he Supreme Court has frequently instructed that a state will not be deemed to have waived its sovereign immunity unless the waiver is express and unequivocal." (internal quotation marks omitted)).[2]

---

[2] The Delaware Supreme Court has explained that § 4001 was enacted to "make clear that public officers and employees would be fully liable where they exercised their authority in a grossly negligent or bad faith manner." *Doe v. Cates*, 499 A.2d 1175, 1181 (Del. 1985). However, "[§ 4001] does not require a conclusion that the State is also liable for such acts in all instances." *Id.*

Delaware's courts (including in the case relied upon by Plaintiffs themselves) have consistently rejected Plaintiffs' reading of the State Tort Claims Act as constituting an express waiver of the state's sovereign immunity in situations in which the three criteria listed in § 4001 are not present.  For example, the Delaware Supreme Court has held, "the [Delaware] legislature did not intend by enacting [§ 4001] to waive sovereign immunity in all cases where a ministerial act was performed with gross or wanton negligence or in bad faith."  *Doe*, 499 A.2d at 1180.  Instead, "§ 4001 must be applied to limit the State's liability where it has, *by some means independent of* [§ 4001], waived immunity."  *Id.* at 1181 (emphasis added); *see also Space Age Prods., Inc. v. Gilliam*, 488 F. Supp. 775, 780 (D. Del. 1980) (holding that § 4001's purpose was merely to codify existing law of official immunity and that the statute is not a "clear declaration" waiving Delaware's sovereign immunity); *Pauley*, 848 A.2d at 573 (noting that "[a]ctions against the State" are limited *both* by Delaware's sovereign immunity *and* the State Tort Claims Act independently); *id.* at 575-76 (reaffirming *Doe*'s holding that the State Tort Claims Act did not waive the State's sovereign immunity in all cases involving gross negligence, and holding that remand to allow gross negligence claims to be brought would be futile because such claims would be barred by the State's sovereign immunity); *Murphy v. Corr. Med. Servs., Inc.*, No. Civ.A. 03-C-04-271-PL, 2005 WL 2155226, at *3 (Del. Super. Ct. Aug. 19, 2005) ("[B]oth the Delaware Supreme Court and the federal courts have held that the State Tort Claims [A]ct does not by itself waive sovereign immunity for state agencies whenever its three-part test is not met. Instead, there must be statutory evidence that the State intended to waive its sovereign immunity for a particular agency." (footnote omitted)).

Here, Plaintiffs have not identified any other statute by which Delaware has expressly waived sovereign immunity in circumstances that apply to this case.  Therefore, Delaware's

sovereign immunity bars Plaintiffs' claims against DSP, and those claims must be dismissed pursuant to Rule 12(b)(1).

### 2.  Claims Against Defendant Seaford Police Department

There are three requirements for a district court exercise personal jurisdiction over a defendant.  "First, the plaintiff's service of process upon the defendant must have been procedurally proper."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).  "Second there must be a statutory basis for personal jurisdiction that renders such service of process effective."  *Id.*  "Third the exercise of personal jurisdiction must comport with constitutional due process principles."  *Id.* at 60.  The statutory grounds for personal jurisdiction are "enumerated in Federal Rule of Civil Procedure 4(k)."  *Id.* at 59.  Here, the only basis for jurisdiction under this provision is Rule (4)(k)(1)(A), which provides for jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).

Seaford PD challenges this Court's personal jurisdiction, contending that it is not covered by any of the provisions of New York's long-arm statute and that the exercise of jurisdiction over it would violate due process.  (Seaford Mem. at unnumbered 3-7.)[3]  Analysis of personal

_____

[3] No Party has addressed whether, under Delaware law, the Seaford Police Department is a suable entity separate from the City of Seaford, and, if not, what effect that should have in this case, where Plaintiffs have not sued the City itself.  Under Rule 17, Seaford PD's capacity to sue or be sued is determined by state and local law.  *See* Fed. R. Civ. P. 17(b)(2)–(3) (providing that a corporation's capacity to sue or be sued is determined "by the law under which it was organized" and the capacity of "all other parties" is determined "by the law of the state where the court is located.")

A number of Delaware courts have held that municipal police departments may not be sued as an entity separate from their corresponding municipalities as a matter of local law.  *See, e.g.*, *Breitigan v. Delaware*, No. 02-CV-1333, 2003 WL 21663676, at *2 (D. Del. July 16, 2003) (dismissing claims against New Castle County Police Department after concluding, as a matter of local and state law, that the Police Department was not an entity separate from the county

jurisdiction over a non-domiciliary in New York proceeds in two steps.  First, in a diversity case,

the court determines whether jurisdiction is proper under the New York long-arm statute.

Second, if the long-arm statute permits jurisdiction, the court evaluates whether its exercise

would comport with the Due Process Clause of the Fifth Amendment.  *See Chloe v. Queen Bee

of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010); *Am. Buddha*, 609 F.3d at 35;

*Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

---

government subject to suit); *Thomas v. Wilmington Police Dep't*, No. 92C-03-244, 1994 WL 315232, at *2 (Del. Super. Ct. June 3, 1994) (dismissing claims against Wilmington Department of Public Safety and Wilmington Police Department because those entities, as a matter of city law, were not separate corporate bodies from the City of Wilmington (citing 3 Eugene McQuillan, The Law of Municipal Corporations § 12.40 (1990)).  The Court has not found the applicable local law of the City of Seaford or any decisions applying to the Seaford PD.  The Court will assume for purposes of these motions that Seaford PD, and not the City of Seaford, is the proper party defendant in this action.  The result would not change if the City of Seaford were substituted for Seaford PD as the real party in interest.

While the Court looks to Delaware law to ascertain whether the Seaford PD is a suable entity, the effect of Rule 17 appears to be that if the Seaford PD is not a "corporation," *see, e.g.*, *Trantham v. Henry Cnty. Sheriff's Office*, No. 10-CV-58, 2011 WL 863498, at *5 (W.D. Va. Mar. 10, 2011) (county sheriff's office and city police department were neither individuals nor corporations), then the Court should apply "the law of the state where the court is located" — i.e., New York law — even though Seaford is a Delaware municipality and New York law (by definition) only governs New York municipalities.  Nonetheless, the handful of federal cases addressing a similar posture suggest just such an answer.  *Cf. Porter v. Dartmouth Coll.*, 678 F. Supp. 2d 15, 16-17 (D.N.H. 2010) (applying New Hampshire law on the capacity of plaintiffs to bring a wrongful death action, which turned on whether plaintiffs were lawfully appointed administrators, even though plaintiffs were made administrators under New York law by a New York probate court); *Powers ex rel. Nexes Grp., LLC v. Telrite Corp., Inc.*, No. 05-CV-216, 2010 WL 5092975, at *3 (S.D. Ind. Dec. 7, 2010) (applying Indiana law to a Delaware LLC's capacity to sue).  Under New York law, police departments are not viewed as suable entities.  *See, e.g.*, *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality[] do not have a legal identity separate and apart from the municipality and cannot sue or be sued.").  However, there is ample authority for the proposition that a municipality can be substituted as a defendant for its agencies.  *See In re Dayton*, 786 F. Supp. 2d 809, 819 (S.D.N.Y. 2011) (noting that while courts routinely dismiss municipal departments as defendants where both the department and the municipality have been named, "courts also have substituted the municipality where only the department had originally been named")

Under New York law, a court "may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction under [New York's Civil Practice Law and Rules ("CPLR")] § 301, or specific jurisdiction, under CPLR § 302." *Overseas Ventures, LLC v. ROW Mgmt., Ltd.*, No. 12-CV-1033, 2012 WL 5363782, at *8 (S.D.N.Y. Oct. 26, 2012).  "Under CPLR § 301 general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the Court, is established over a foreign [defendant] engaging in a 'continuous and systematic course of doing business in New York.'" *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012).  Here, however, Plaintiffs have not asserted general jurisdiction over Defendants on this basis.  Instead, Plaintiffs claim that this Court may assert specific personal jurisdiction under CPLR § 302.

Section 302(a) provides in relevant part:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

Plaintiffs specifically rely on §§ 302(a)(3)(i) and (ii).[4]  (Pls.' Mem. 14-16.)  For either

subsection to apply, (1) a defendant must have committed a tortious act outside New York, (2)

the cause of action must arise from that tortious act, and (3) the act must have caused injury to a

person or property within New York.  *See LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883, 886

(N.Y. 2000).  Under subsection 302(a)(3)(i), the plaintiff must further demonstrate one of "four

alternative forms of ongoing New York activity by [the] defendant," *Croskey v. Med. & Tech.

Servs., Inc.*, No. 05-CV-6641, 2006 WL 2347816, at *4 (S.D.N.Y. Aug. 10, 2006) — regularly

doing business in New York, regularly soliciting business in New York, engaging in a

"persistent course of conduct" in New York, or deriving "substantial revenue from goods used or

consumed or services rendered" in New York.  N.Y. C.P.L.R. § 302(a)(3)(i); *see also Magwitch,

LLC v. Pusser's Inc.*, 923 N.Y.S.2d 455, 457 (App. Div. 2011) (outlining requirements for long-

arm jurisdiction under Section 302(a)(3)).  Under subsection 302(a)(3)(ii), the plaintiff must

demonstrate that the defendant "expected or should reasonably have expected the [tortious] act

to have consequences in [New York]," and that defendant "derived substantial revenue from

interstate or international commerce."  *Pak-Mor*, 735 N.E.2d at 886; *see also Am. Buddha*, 609

F.3d at 35 (same); *Magwitch*, 923 N.Y.S.2d at 457 (same).

---

[4] Defendants' principal authority in challenging personal jurisdiction is *Marsh v. Kitchen*, 480 F.2d 1270 (2d Cir. 1973).  (DSP Mem. 6-7; Seaford Mem. at unnumbered 3.)  There, defendants, a Missouri law enforcement officer and prosecutor, mistakenly caused a warrant to be issued in Missouri for the arrest of the plaintiff, which took place in New York.  *Marsh*, 480 F.2d at 1271.  The district court dismissed for lack of personal jurisdiction and the Second Circuit affirmed.  *Id.* at 1272.  Although *Marsh* is factually quite similar to this case, it is of limited use here because the Second Circuit interpreted N.Y. C.P.L.R. §§ 302(a)(1) and (2) — governing non-domiciliaries transacting business in New York or committing tortious acts *within* the state — and held in relevant part that the defendants had not committed a tort *within* New York in person or through their agents.  *See id.* at 1272-73 & n.5.  For reasons unknown, § 302(a)(3) was not at issue, and thus the case is not controlling here.

Plaintiffs argue that jurisdiction is proper under § 302(a)(3) because Seaford PD committed a tortious act in Delaware (negligence in searching for Doe at the wrong address and failing to confirm his whereabouts using information it had in its possession, resulting in the Delaware warrant's being wrongly issued (Compl. ¶¶ 56, 63)), which caused injury in New York (Doe's eventual arrest and the ensuing publicity).  Plaintiffs contend the requirements of subsection (i) are met because Seaford PD "regularly engage[s] in [a] persistent course of conduct in New York" consisting of the "issuance of warrants, execution of warrants, extradition, appearances in court and the purchase of goods and services from New York manufacturers."  (Pls.' Mem. 15.)  Plaintiffs further argue that jurisdiction is proper under subsection (ii) because Seaford PD should have expected the issuance of the Delaware warrant to have consequences in New York, as it was allegedly entered into national computer databases. Seaford PD also allegedly "derive[s] substantial income from interstate commerce in the form of traffic tickets, fines, bail, licenses, donations and permits."  (*Id.*).

### a.  C.P.L.R. § 302(a)(3): "[I]njury . . . within the state"

The first difficulty Plaintiffs encounter is that § 302(a)(3) requires the alleged tortious act to have caused "injury to person or property within the state."  It is well established that this requirement is not satisfied simply because the injured plaintiff is a New York resident or domiciliary.  *See, e.g.*, *Foot Locker Retail, Inc. v. SBH, Inc.*, No. 03-CV-5050, 2005 WL 91306, at *4 (S.D.N.Y. Jan. 18, 2005); *Fantis Foods, Inc. v. Std. Importing Co.*, 402 N.E.2d 122, 126 (N.Y. 1980).  Rather, jurisdiction "must be based upon a more direct injury within the State . . . than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there."  *Fantis Foods*, 402 N.E.2d at 126.

The Second Circuit has interpreted the injury requirement in § 302(a)(3) to mean that the

15

"original event which caused the injury" must have taken place in New York. *Am. Buddha*, 609

F.3d at 39 (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per

curiam)); *see also Magwitch*, 923 N.Y.S.2d at 458 ("The determination of whether a tortious act

committed outside New York causes injury inside the state is governed by the 'situs-of-injury'

test, requiring determination of the location of the original event that caused the injury.")  "This

original event is . . . generally distinguished not only from the initial tort but from the final

economic injury and the felt consequences of the tort." *Id.* at 39-40 (internal quotation marks

omitted).  "The original event occurs where the first effect of the tort that ultimately produced

the final economic injury is located." *Id.* (alteration and internal quotation marks omitted).  "The

fact that the consequences of . . . alleged [tortious] acts may have continued in New York does

not make New York the site of the [acts]," if their first effect takes place elsewhere. *Wilson v.*

*Danka Corp.*, No. 01-CV-10592, 2002 WL 31929120, at *3 (S.D.N.Y. Jan. 28, 2003).

The key question in this analysis is the timing and location of the initial injury, as distinct

both from the tortious act itself and from damages suffered later due to derivative effects of the

initial injury.  *See Am. Buddha*, 609 F.3d at 39-40.  Thus, in negligence cases involving personal

injuries or property damage where the alleged negligent acts took place out of state, if the injury

takes place entirely within New York, the in-state injury requirement under § 302(a)(3) is

satisfied.  *See* Vincent C. Alexander, N.Y. C.P.L.R. Practice Commentaries, C302:11 (2010)

(positing example of tool defectively manufactured in another state and shipped to New York,

where it caused injuries).  On the other hand, where the out-of-state negligent acts and resulting

initial injury take place near simultaneously, the "first effect" of the tort will be the location of

the alleged accident.  *See, e.g.*, *Maldonado v. Rogers*, 99 F. Supp. 2d 235, 238-39 (N.D.N.Y.

2000) (collecting cases holding that automobile accidents out of state involving New York

16

plaintiffs do not involve injuries "within" New York for purposes of § 302(a)(3)).  Significantly, this is so even if the plaintiff continues to suffer damage from his or her injuries, or suffers subsequent additional injuries caused by the same acts, in New York afterwards.  *See, e.g.*, *Harris v. Ware*, No. 04-CV-1120, 2005 WL 503935, at *2-3 (E.D.N.Y. Mar. 4, 2005) (injury arising from auto accident in Delaware took place in Delaware, not New York, even though plaintiffs were New York residents and sought medical treatment after the accident in New York); *Hartford Fire Ins. Co. v. M/V "MSC INSA,"* No. 03-CV-2196, 2003 WL 22990090, at *2-3 (S.D.N.Y. Dec. 18, 2003) (injury arising from alleged negligent storage of cargo aboard ship, resulting in seawater damage while at sea, did not take place in New York, as first effect of negligence was damage to cargo rather than subsequent economic injury to owner); *Hermann v. Sharon Hosp., Inc.*, 522 N.Y.S.2d 581, 582-83 (App. Div. 1987) (injury occurred in Connecticut hospital where malpractice took place); *Kramer v. Hotel Los Monteros S. A.*, 394 N.Y.S.2d 415, 416 (App. Div. 1977) (dog bite occurring in Spain but the most severe medical effect of which developed only after plaintiff returned to New York was not an injury within New York for § 302(a)(3) purposes).

Faherty v. Fender, 572 F. Supp. 142 (S.D.N.Y. 1983), provides a useful example.  There, the plaintiffs, New York residents, brought suit against a Texas defendant who had previously obtained a default judgment against plaintiffs in Texas in an earlier lawsuit, allegedly by fraud. 572 F. Supp. at 143-44.  The plaintiffs alleged that they suffered injuries in New York in that the threat of the default's enforcement existed in New York, where plaintiffs lived, the judgment harmed plaintiffs' credit, and the plaintiffs suffered emotional distress in New York.  *Id.* at 148-49.  The court held that these were not "injur[ies] to person or property within New York" under § 302(a)(3), because the *direct* injury resulting from the defendant's fraud, the entry of the

17

default judgment, took place in Texas. *Id.* at 150.  The other alleged injuries "are clearly consequences of that default judgment," but they "would be sustained by plaintiffs irrespective of where they reside or do business." *Id.*  They were suffered in New York solely because plaintiffs happened to reside there, and were thus too indirect under § 302(a)(3). *Id.*

Also instructive is *De Ganay v. De Ganay*, No. 11-CV-6490, 2012 WL 6097693 (S.D.N.Y. Dec. 6, 2012), in which the court addressed whether it had personal jurisdiction where the plaintiff alleged that one defendant (the plaintiff's former spouse) made certain misrepresentations to a French court regarding whether a Paris apartment was a "marital residence."  According to the plaintiff, based on the defendant's misrepresentations, the French court liquidated plaintiff's marital estate. *Id.* at *2.  Plaintiff sued her former husband and others to recover the value of the Paris property (or her share of it) and, when Defendants did not answer, sought a default judgment. *Id.* at *4.  The court denied the plaintiff's default judgment, concluding that it lacked personal jurisidction over the ex-husband (and other defendants).  In reasoning similar to that in *Faherty*, the court concluded that the "the situs of plaintiff's injury" was France, because the "original event" that caused plaintiff's injury "understood as the 'first effect' of defendants' alleged tort," was "the French Court's reliance on defendants' alleged misrepresentation." *Id.* at *6.

Applying the principles drawn from these cases, the Court finds that the "initial tort[s]" alleged here are the DSP's negligence in searching for Doe at the wrong address and failing to check Doe's whereabouts with information available to Defendants.  (Compl. ¶ 56.)  The Seaford PD, in turn, is alleged to have relied on DSP's negligent actions to seek the warrant for Doe's arrest.  (*Id.* ¶¶ 24-25.)  The issuance of the warrant was therefore the "original event" that caused any injuries that followed, and it took place in Delaware.  Even reconceptualizing the tort

to include the issuance of the warrant as a separate act of negligence, (*id.* ¶ 63), its "first effect" was felt in Delaware, where Doe still lived at the time and where he would have been subject to arrest pursuant to the warrant, and not in New York, to which Doe moved only after all of the events constituting Defendants' negligence allegedly took place.  (*Id.* ¶ 35 (alleging that Doe moved to New York "[s]ubsequent to the issuance of the [Delaware warrant]").)  Thus, while there may have been a time lapse between the initial injury — the issuance of the arrest warrant — and a further consequence resulting from the same acts — Doe's later arrest in New York — that does not change the fact that the initial injury took place in Delaware.  *Cf. Hotel Los Monteros*, 394 N.Y.S.2d at 416.[5]  As with the default judgment in *Faherty* and the liquidation judgment in *De Ganay*, once the warrant was issued, the threat of its enforcement would be felt wherever Doe went, and that he was eventually arrested in New York was merely the result of the fortuity that he happened to be there when the warrant was discovered.[6]

_____

[5] The Court notes that Plaintiffs have not alleged that the New York officials who arrested Doe did anything illegal because Plaintiffs do not allege any facts suggesting that the New York officials had any reason to doubt the facial validity of the warrant.  *See Groh v. Ramirez*, 540 U.S. 551, 557–65 (2004) (holding that an officer who executed a search warrant is immune from suit under § 1983 unless the warrant "was so obviously deficient that [a court] must regard the search as 'warrantless.'").

[6] Similarly, courts applying CPLR § 302(a)(3) have found that the initial injury arising from the tort of malicious prosecution occurs in New York only when the plaintiff resides in New York at the time of the initiation of the proceedings.  *See Rothstein v. Carriere*, 41 F. Supp. 2d 381, 385–86 (E.D.N.Y. 1999) (holding that, where plaintiff resided and conducted business in New York and defendant "could reasonably foresee that making false statements to law enforcement officials for the purpose of instigating a criminal prosecution would have consequences on plaintiff in New York," the locus of injury for an out-of-state prosecution was New York); *see also Hanly v. Powell Goldstein, LLP*, No. 05-CV-5089, 2007 WL 747806 (S.D.N.Y. Mar. 9, 2007), *aff'd* 290 F. App'x 435 (2d Cir. 2008) (same reasoning).  Here, at the time warrant was issued, Doe was still in Delaware.  (Compl. ¶ 35.)  Thus, under the reasoning of these cases, Delaware is the locus of the initial injury.  *See also Allred v. Moore & Peterson*, 117 F.3d 278, 283 (5th Cir. 1997) (no personal jurisdiction in Mississippi over a defendant who allegedly committed tort of malicious prosecution by initiating a lawsuit in Louisiana); *Nielson*

Therefore, even if the allegations in the Complaint are accepted as true, Plaintiffs have not pled that Seaford PD "commit[ted] a tortious act without the state causing injury to person or property within the state," as is required for personal jurisdiction under either subsection of § 302(a)(3).

### b.  C.P.L.R. § 302(a)(3)(i)

Even if Plaintiffs had alleged an in-state injury, however, Plaintiffs have also failed to plead facts sufficient to support a prima facie case of personal jurisdiction under subsection 302(a)(3)(i).  The Complaint contains no facts indicating that Seaford PD has any contacts with New York whatsoever, let alone that it has engaged in a "persistent course of conduct . . . in the state."  Indeed, the Complaint only alleges that Delaware did *not* seek Doe's extradition following his arrest in New York.  (Compl. ¶ 41.)

In their motion papers, Plaintiffs merely assert that Defendants issue warrants, execute warrants, and seek extradition in New York, make New York court appearances, and purchase goods and services from New York manufacturers.  (Pls.' Mem. 15.)  These "conclusory non-fact-specific jurisdictional allegations" are insufficient without further details, *Jazini*, 148 F.3d at 185, which Plaintiffs could have included in the Complaint or in affidavits (assuming that doing so would be consistent with Plaintiffs' Rule 11 obligations), *SNET*, 624 F.3d at 138 (prima facie showing of jurisdiction "may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction

---

*v. Bulson*, 979 F. Supp. 1239, 1245 (E.D. Wisc. 1997) (no personal jurisdiction in Wisconsin over a defendant who allegedly committed tort of malicious prosecution by initiating a lawsuit in Tennessee).

over the defendant") (internal quotation marks omitted).[7]   Moreover, under subsection

302(a)(3)(i), a defendant's contacts with New York must be part of "*ongoing* activity within

New York State." *Ingraham v. Carroll*, 687 N.E.2d 1293, 1295 (N.Y. 1997) (emphasis added).

They "must be regular, persistent or substantial," and, therefore, "[t]he one shot business

transaction is insufficient . . . ." *Hearst Corp. v. Goldberger*, No. 96-CV-3620, 1997 WL 97097,

at *14 (S.D.N.Y. Feb. 26, 1997) (quoting 1 Weinstein, Korn & Miller, New York Civil Practice:

CPLR ¶ 302.14 (1996)) (internal quotation marks omitted).   Thus, while "purchases from

companies located in New York can . . . demonstrate regular business dealings with the forum,"

*Del Ponte v. Universal City Dev. Partners, Ltd.*, No. 07-CV-2360, 2008 WL 169358, at *4

(S.D.N.Y. Jan. 16, 2008), those purchases must be of a sufficient amount and regularity to

constitute "ongoing activity" in New York.   *See, e.g.*, *David Tunick, Inc. v. Kornfeld*, 813 F.

Supp. 988, 991 (S.D.N.Y. 1993) (section 302(a)(3)(i) satisfied where defendant purchased works

of art from New York art galleries and collectors, earned substantial revenue from art sales in

New York, and engaged in substantial non-business activities in New York, such as the

exhibition of his paintings there).   Although Plaintiffs assert Defendants have "purchase[d] . . .

---

[7] The Court may take judicial notice of the Seaford City Charter, section 18 of which provides that the "police officers [of the City of Seaford] shall be conservators of the peace within the limits of said City" and are "vested, within the city limits and within one mile outside of said limits," and "in the case of hot pursuit of an offender . . . to any part of the State of Delaware," with "all the powers and authority" available under Delaware law.   Seaford, Del., Charter, § 18, *available at* http://charters.delaware.gov/seaford.shtml.   Further, it stretches credulity to think that the Police Department of the City of Seaford, Delaware — population 6928, with 27 full-time police officers and 11 civilian employees — *regularly* comes to New York to "issue" or "execute" warrants, seek extraditions, or make court appearances.   *See* Del. Office of State Planning Coordination, 2010 Census Data for Delaware, http://stateplanning.delaware.gov/census_data_center/2010_data.shtml (last visited Jan. 25, 2013); City of Seaford: Police, http://www.seafordde.com/index.cfm?ref=48100 (last visited Jan. 25, 2013).

goods or services from New York manufacturers," that conclusory assertion alone does not

establish that Defendants engaged in a "persistent course of conduct" in this State.  *See Maggi v.*

*Women's Coll. Hosp.*, No. 03-CV-768, 2007 WL 841765 (N.D.N.Y. Mar. 19, 2007) (plaintiff's

"conclusory statement that [out-of-state defendant] 'contracts business within the state of New

York'" is insufficient to allow a court to conclude that the defendant "solicits business or

engages in any other persistent course of conduct in the state of New York").  Thus, Plaintiffs

have failed to satisfy this prong of personal jurisdiction under 302(a)(3)(i).

<u>c.  C.P.L.R. § 302(a)(3)(ii)</u>

Subsection 302(a)(3)(ii) requires that a defendant "expected or should reasonably have

expected the [tortious] act to have consequences in New York," and that "the defendant derived

substantial revenue from interstate or international commerce."  *Penguin Group (USA) Inc. v.*

*Am. Buddha*, 946 N.E.2d 159, 162 (N.Y. 2011).  "Both conditions — foreseeability and revenue

— must be met before jurisdiction can be sustained."  2 Weinstein, Korn & Miller, *supra*, ¶

302.14(3).

Plaintiffs allege that the Delaware warrant "came up in a background check" when Doe

was pulled over in New York in September 2009.  (Compl. ¶ 38.)  Plaintiffs further assert that

"the warrant issued and the sex offender data base are either derived from or connected to a

statewide network which includes New York."  (Pls.' Mem. 15.)  The tortious acts alleged relate

to Defendants' issuing of the warrant, not to Doe's designation as a sex offender, and it is those

acts that must have had foreseeable consequences in New York.

Even assuming, without deciding, that it is reasonably foreseeable that the issuance by a

local police department in Delaware of a warrant that may be found on a national database could

have had consequences in New York — a questionable assumption because Plaintiffs do not

allege the Seaford PD had *any* reason to believe Doe was in, or would be moving to, New York

when the warrant was issued — Plaintiffs allege nothing that suggests Seaford PD "derives

substantial revenue from interstate or international commerce."  The Complaint, again, alleges

nothing in this regard.  Plaintiffs say in their motion papers that Defendants "derive substantial

income from interstate commerce in the form of traffic tickets, fines, bail, licenses, donation and

permits."  (Pls.' Mem. 15.)  Even if Seaford PD derives "substantial income" from these

activities, they are nothing more than the regular tasks of a local police department.  They are

arguably not "commerce" — "[t]he buying and selling of goods, esp. on a large scale,"

Webster's II New Revised University Dictionary 286 (1988); *cf. Ingraham*, 687 N.E.2d at 1296

(suggesting that the "provision of medical services" may not meet the definition of "commerce")

— and certainly not "interstate."[8]  *Cf. Gonzales v. Raich*, 545 U.S. 1, 34 (2005) (Scalia, J.,

concurring in the judgment) (distinguishing between "interstate commerce" itself and "activities

that substantially affect interstate commerce").  Indeed, Plaintiffs have not alleged that the

routine police work of the Seaford PD — traffic tickets, fines, etc. — involved interstate

travelers or anybody outside Delaware, such that their activities generate substantial income

from interstate commerce.  *Cf. United States v. Mann*, 493 F.3d 484, 495–96 (5th Cir. 2007)

(vacating Hobbs Act convictions because prosecution failed to prove that drivers allegedly

extorted for traffic violations by local police were traveling outside state); *United States v. Box*,

50 F.3d 345, 352 (5th Cir. 1995) (invalidating Hobbs Act counts because victims "were Texas

residents and traveling within the state," and therefore "there was no showing that interstate

commerce was affected.").

---

[8] See also *supra* note 7, discussing the scope of the Seaford PD's duties, as well as the
size of the city of Seaford and its police department.

23

Plaintiffs have therefore failed to establish a prima facie case of jurisdiction under C.P.L.R. § 302(a)(3)(ii).

### d.  Due Process

Even if Plaintiffs established a statutory basis to exercise long-arm jurisdiction over the Seaford PD, the Court must then determine whether extension of personal jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).  To do so, the Court analyzes two components: "minimum contacts," and "reasonableness."  *Id.*; *see also Chloe*, 616 F.3d at 164.  Generally, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  "The contacts must be such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *MacDermid, Inc. v. Deiter*, — F.3d — , 2012 WL 6684580, at *4 (2d Cir. Dec. 26, 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Where, as alleged here, "the claim arises out of, or relates to, the defendant's contacts with the forum . . . minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *Bank Brussels Lambert*, 305 F.3d at 127 (internal quotation marks omitted); *see also Burger King*, 471 U.S. at 475 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."); *Three Five Compounds, Inc. v. Scram Tech., Inc.*, No. 11-CV-1616, 2011 WL 5838697, at *6 (S.D.N.Y. Nov. 21, 2011) (same).  "Physical

24

presence in the forum state, however, is not required." *MacDermid*, 2012 WL 6684580, at *4.[9]

If a plaintiff has established that a defendant has substantial minimal contacts, the Court must then determine whether the exercise of personal jurisdiction is reasonable. *See Chloe*, 616 F.3d at 172-73. To do this, the Court is to consider five factors: (i) the burden on the defendant; (ii) the interests of the forum state; (iii) the plaintiff's interest in obtaining relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (v) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987); *MacDermid*, 2012 WL 6684580, at *5; *Chloe*, 616 F.3d at 173.

Applying these principles, the Court concludes that the exercise of personal jurisdiction over the Seaford PD would not comport with the Due Process Clause. As noted, in their Complaint, Plaintiffs offer no allegations establishing Seaford's contacts with New York. In their Memorandum of Law in opposition to the Motion to Dismiss, Plaintiffs, in a single sentence, merely assert that both Defendants "maintained and had access to a national sex offender database, issued warrants nationwide, appear[ed] in court as witnesses and handle[d] nationwide extraditions which all pose the possibility of causing injury in another state, particularly New York." (Pls.' Mem. 17.) These allegations are inadequate to establish that the Seaford PD has regular contact with New York.

_____

[9] "A state [also] may assert 'general jurisdiction' — i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts — only where these contacts are 'continuous and systematic.'" *Bank Brussels Lambert*, 305 F.3d at 127 (internal citation omitted); *see also Helicopteros Nactionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Plaintiffs do not assert general jurisdiction here, but even if they did (or meant to), their assertions of the Seaford PD's contacts with New York (as noted above and below) are woefully insufficient to prevail on such a theory.

First, Plaintiffs general allegations lump both Seaford PD and DSP together, but the Supreme Court has made clear that "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a . . . court exercises jurisdiction."). Thus, whatever may be said about Plaintiffs' generalized claims about DSP and the Seaford PD collectively, they have offered nothing by way of a specific allegation of Seaford PD's contacts with New York.

Second, the aforementioned one-line list of allegations, even if directed only at the Seaford PD, is far too conclusory and nonspecific to make out a prima facie case of contacts between the Seaford PD and New York. Indeed, courts have regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contacts with the forum state. *See Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (noting that "conclusory allegations are not enough to establish personal jurisdiction"); *Plunket v. Doyle*, No. 99-CV-11006, 2001 WL 175252, at *3 (S.D.N.Y. Feb. 22, 2001) ("Because plaintiff has alleged no facts beyond conclusory allegations, tending to show that defendants or their agents had contacts with New York and availed themselves of this forum, plaintiff has not met her due process burden."); *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998) (noting that while "the plaintiff is entitled to his complaint and any doubts resolved in the light most favorable to him," the plaintiff "cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum"); *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 4 (D.D.C. 1996) ("The plaintiff must allege specific facts connecting each defendant with the forum state and cannot rest on bare

allegations or conclusory statements.").[10]  Thus, the Court finds that Plaintiffs' general

allegations do not establish minimum contacts between the Seaford PD and New York.[11]

Plaintiffs' allegations regarding the Seaford PD's conduct in this case also fail to

establish that the Seaford PD has purposefully availed itself of the privilege of conducting

business in New York such that specific jurisdiction would comport with Due Process.  Taking

Plaintiffs' allegations to be true, the Seaford PD issued a warrant for Doe's arrest, after falsely

being told by a DSP detective of Doe's failure to abide by the sex offender registration

requirements.  (Compl. ¶ 25.)  Plaintiffs acknowledge that at the time the warrant was issued,

Doe was still living in Delaware.  (*Id.* ¶ 35.)  Moreover, the Complaint contains no allegations

---

[10] It also bears noting that Plaintiffs' broad claims — for example, that Defendants "issue[] warrants nationwide, appear in court as witnesses and handle nationwide extraditions," and that they regularly do these things in New York — seem on their face exaggerated when describing the police department in a town of approximately 7000.  *See supra* note 7.  If there were a basis for such an allegation as to the Seaford PD, presumably Plaintiffs could cite *one* example of the Seaford PD actively working a case in New York, or with New York officials.  Instead, Plaintiffs have only described the kind of work done by many police departments and have just *assumed* that such work necessarily involves regular contact with New York.  The problematic ramifications of such a view of personal jurisdiction are obvious and, unsurprisingly, find no support in the caselaw.  *Cf. Wright v. Linhardt*, No. 98-CV-1555, 2000 WL 92810, at *9 (D. Or. Dec. 14, 1998) ("[I]t would be unreasonable to exercise personal jurisdiction over a prosecutor when, while fulfilling his duty to fully prosecute suspected criminals, he obtained extradition of a defendant back to the proper jurisdiction based on discussions with a prosecutor from another jurisdiction where the defendant was found.  Otherwise, all discussions between prosecutors attempting to obtain extradition or information about a defendant would satisfy personal jurisdiction requirements in a foreign jurisdiction in a subsequent civil action.").

[11] Plaintiffs' allegations, because they are so inadequate, do not merit jurisdiction-related discovery.  *See Plunket*, 2001 WL 175252, at *4 (holding that plaintiff had "not alleged facts sufficient to warrant discovery on the question of personal jurisdiction"); *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (holding that court would "not approve a fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper," and noting that the plaintiff must make a "sufficient start" toward establishing jurisdiction before discovery is appropriate).

that any official from the Seaford PD took any active steps to execute the arrest warrant after it was issued, let alone that any Seaford PD official initiated contact with any New York officials to seek their cooperation in the arrest and extradition of Doe.  Instead, the Complaint alleges that New York officials were only made aware of the warrant when they pulled Doe over for a traffic violation and a background check was done on him by New York law enforcement officials.  (*Id.* ¶¶ 37-38.)  And, in fact, Plaintiffs admit that neither DSP nor the Seaford PD sought Doe's extradition.  (*Id.* ¶ 41.)  Thus, all that Plaintiffs have alleged is that the Seaford PD issued an arrest warrant for Doe *before* he moved to New York, that the warrant was lodged in some nationwide database (presumably NCIC)[12], that the warrant led to Doe's arrest in New York after he was stopped by New York officials on a traffic violation, and that nobody from the Seaford PD asked New York officials to assist in the extradition (let alone the arrest) of Doe.

The Court concludes that these facts do not establish "purposeful availment."  Actually, this is the conclusion of courts nationwide, which have regularly have rejected assertions of personal jurisdiction against out-of-state law enforcement officials who have merely issued warrants and lodged their warrants in nationwide databases.  *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 693 (9th Cir. 2001) ("[New York State Department of Corrections Services] as an entity may not have directed its efforts to arrest Robert Sanders toward California by simply registering Robert Sanders's fugitive warrant with the NCIC . . . ."), *overruled on other grounds as recognized by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002); *Hicks v. Assistant Attorney Gen'l*, No. 08-CV-362, 2010 WL 5067611, at *5

---

[12] "NCIC," which stands for "National Crime Information Center," is a "computerized index of criminal justice information . . . available to Federal, state, and local law enforcement and other criminal justice agencies."  Fed. Bureau of Investigation, National Crime Information Center (NCIC), http://www.fas.org/irp/agency/doj/fbi/is/ncic.htm (last visited Jan. 28, 2013).

(W.D. Mo. Dec. 6, 2010) ("The posting of the warrant for plaintiff's arrest on NCIC . . . is not an activity that can support this Court's exercise of jurisdiction over defendant . . . ."); *Snyder v. Snyder*, No. 063072, 2007 WL 894415, at \*4 (D. Minn. Mar. 21, 2007) ("Posting a warrant on the NCIC system is not an act of purposeful availment."); *Cook v. Holzberger*, 788 F. Supp. 347, 351 (S.D. Ohio 1992) (holding that "simply accessing the information available through the NCIC system is insufficient to constitute 'purposeful availment,'" and that to hold otherwise "would subject law enforcement officers to personal jurisdiction in every state").  Courts also have found personal jurisdiction wanting where the out-of-state law enforcement officials responded to inquiries from forum state officials executing the warrant, or where out-of-state officials merely exchanged telephone calls with forum state officials or submitted forms incidental to extradition of the defendant from the forum state (none of which ever happened here).  *See, e.g., Tisdale v. Nadramia*, No. 11-CV-647, 2012 WL 693563, at \*4 (D.S.C. Feb. 7, 2012) (holding that contacts with forum state law enforcement officials that were incidental to extradition were insufficient to establish purposeful availment), *report and recommendation adopted by* 2012 WL 693525; *Ray v. Simon*, No. 07-CV-1143, 2008 WL 5412067, at \*16 (D.S.C. Dec. 24, 2008) (rejecting personal jurisdiction where the "only asserted contacts" that New Jersey law enforcement officials had with South Carolina were the filing of "various forms" and "multiple telephone calls" to South Carolina); *Hicks*, 2010 WL 5067611, at \*5 (conversations with forum state law enforcement officials insufficient to demonstrate purposeful availment where forum state official located plaintiff in the forum state and initiated contact with out-of-state officials responsible for warrant); *Snyder*, 2007 WL 894415, at \*4 ("[T]he warrant, fax, and alleged transfer of information are not enough to establish that defendants have availed themselves of the benefits and protections of [the forum state].");  *Williams v. Cook County*

*Sheriff's Dep't*, No. 93-CV-212, 1995 WL 75386, at *2 (N.D. Ill. Feb. 22, 1995) ("[A] phone call by a law enforcement official from one state notifying a law enforcement agency in another state of the apprehension of a wanted person does not give rise to minimum contacts sufficient to subject the law enforcement officer to personal jurisdiction in the foreign state where the law enforcement agency is located.").

By contrast, where the allegations are that out-of-state law enforcement officials either had an established relationship with the forum state officials or otherwise closely coordinated their activities in the apprehension and/or extradition of the defendant, courts have found sufficient contacts to support personal jurisdiction. *See, e.g., Lee*, 250 F.3d at 693 (holding that there was personal jurisdiction in California over New York law enforcement officials who took "deliberate actions" of working with Los Angeles police officials to arrange for the extradition of a fugitive, which actions included "regular" communications and the transmission of an "identification packet"); *Adelphin v. Detective Gabriel Camacho*, No. 98-CV-6299, 1999 WL 301805, at *3-4 (E.D. Pa. May 11, 1999) (holding that defendants "purposely directed their activities toward this forum using Pennsylvania's legal system and law enforcement agents to secure plaintiff's arrest for the City of Camden"). But, Plaintiffs have not alleged any such proactive conduct by the Seaford PD, which, in fact, did *not* request New York officials to arrest Doe and which did *not* request his extradition. Instead, New York officials happened upon Doe's arrest warrant when they stopped him for a traffic violation. This mere fortuity, however, does not establish that the Seaford PD purposefully availed itself of New York's legal system or that it should have foreseen that it would be haled into New York's courts. *See Hicks*, 2010 WL 5067611, at *5 ("Defendant . . . undoubtedly would have had similar conversations with whatever jurisdiction arrested plaintiff, whether plaintiff was located in Kansas, Missouri, or any

30

other state.  These are exactly the sort of random, attenuated or fortuitous contacts that have been

held insufficient to justify exercise of personal jurisdiction.").  Therefore, the Court finds that it

would not comport with Due Process to exercise personal jurisdiction over the Seaford PD.[13]

### 3.  Leave to Amend

Plaintiffs have sought leave to amend the Complaint to allege "causes of action of

violation of due process and violation of equal protection rights."  (Letter from Rick S. Cowle,

Esq., to the Ct. (June 2, 2010), at 6.)  The Court takes this request as one to add claims under 42

U.S.C. § 1983.  *See Fenner v. City of New York*, 392 F. App'x 892, 893 (2d Cir. 2010) (summary

order) (noting that § 1983 displaces implied causes of action grounded directly in the

Constitution for constitutional violations).  Though leave to amend should generally be freely

granted, "a district court may properly deny leave when amendment would be futile."  *Jones v.*

*N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999).  Adding the

proposed § 1983 claims would be futile: against DSP, they would still be barred by Delaware's

sovereign immunity as states are not "persons" subject to suit under § 1983, *see Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 64-65 (1989), and amendment would not cure the Court's

lack of personal jurisdiction over Seaford PD, *see Hunter v. Deutsche Lufthansa AG*, 863 F.

Supp. 2d 190, 202 (E.D.N.Y. 2012) (where plaintiff moved to amend complaint to add new

federal statutory claims, motion denied as futile because "the Court does not have personal

jurisdiction over [the defendant], . . . and so the addition of claims against [that defendant] would

likewise be unable to withstand a motion to dismiss for lack of personal jurisdiction"); *see also*

---

[13] Because the Court concludes that Plaintiffs have not established sufficient minimum
contacts to justify personal jurisdiction, it does not consider whether exercise of jurisdiction over
the Seaford PD would be reasonable.

*Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (leave to amend may properly be denied when amended complaint could not "withstand a motion to dismiss"). Leave to amend is therefore denied.

### III. Conclusion

For the reasons stated herein, the claims against Defendant DSP are dismissed without prejudice for lack of subject matter jurisdiction. As to Defendant Seaford PD, the Court has the discretion to transfer this case to a district in which personal jurisdiction and venue would be proper (i.e., the District of Delaware), rather than dismissing it outright, if the interests of justice warrant it. *See Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 & n.9 (2d Cir. 2000). Plaintiffs here have opposed a transfer to Delaware (Pls.' Mem. 19-23), but Plaintiffs may suffer prejudice if this case is dismissed. *See* Del. Code Ann. tit. 10, § 8119 (statute of limitations on personal injury actions is two years in Delaware); *see also Stair v. Calhoun*, No. 07-CV-3906, 2009 WL 792189, at *15 n.11 (E.D.N.Y. Mar. 23, 2009) (declining to order a transfer in lieu of dismissing for lack of personal jurisdiction where plaintiffs did not request transfer and plaintiffs would not suffer prejudice in the form of a "statute of limitations issue" if they chose to re-file). Plaintiffs are therefore directed to inform the Court by letter within twenty days whether they continue to oppose a transfer to the District of Delaware in light of this Court's opinion. If Plaintiffs' position is unchanged, or if the Plaintiffs do not respond, the Court will dismiss the claims against Seaford PD for lack of personal jurisdiction.

Also, the Parties are directed to submit proposed redactions to this Opinion so that a redacted version may be publicly filed, or they are directed to explain why the entire Opinion, even if redacted, should remain under seal.  These submissions are also due in twenty days.[14]

SO ORDERED.

Dated:        White Plains, New York
              April  4  , 2013

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[14] The reader should note that this Amended Opinion is the product of that redaction process.